## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PHILIP MCDANIEL,

      Plaintiff,

v.

NEUROPACE, INC.,

      Defendant.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Philip McDaniel files this Complaint against his former employer, Defendant NeuroPace, Inc. ("Defendant" or "NeuroPace") and alleges that Defendant violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"), by (1) terminating his employment based on his age, and (2) retaliating against him for engaging in protected activity.

## INTRODUCTION AND NATURE OF THE ACTION

1.  Plaintiff is currently fifty-seven (57) years old.  He is a former employee of NeuroPace, where he was employed as a Regional Manager from approximately August 2022 until the company terminated his employment on September 6, 2023.

2.      In approximately June 2023, Defendant began subjecting Plaintiff to discrimination and a hostile work environment based on his age, created by Vice President of Sales, Kelley Nicholas, who is approximately in her mid-40s.  For example, Ms. Nicholas publicly berated Plaintiff without cause in front of his colleagues on multiple occasions.

3.      The discriminatory treatment and hostile work environment continued throughout the balance of Plaintiff's employment, and, on August 4, 2023, Plaintiff notified NeuroPace's CEO that he believed that he was being discriminated against based on his age.  When that opposition yielded no results, on or about August 17, 2023, Plaintiff complained to Defendant's Vice President of Human Resources, Irene Blevin, that he was being subjected to a hostile work environment and age discrimination.  To the best of Plaintiff's knowledge, no substantive action was taken regarding Plaintiff's complaints.

4.      Shortly thereafter, on September 6, 2023, in retaliation for Plaintiff's protected activity and/or because of Plaintiff's age, NeuroPace terminated Plaintiff's employment.

5.      Defendant violated the ADEA by: (a) terminating Plaintiff's employment because of his age and (b) retaliating against him for engaging in protected activity.  Plaintiff seeks all available relief under the ADEA, including

2

declaratory relief, lost wages and benefits, an equal amount of liquidated damages, prejudgment and post-judgment interest, and attorneys' fees and costs of litigation.

## JURISDICTION AND VENUE

6.    This court has federal question jurisdiction over Plaintiff's ADEA claims pursuant to 28 U.S.C. § 1331.

7.    Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3) and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment practices described herein were committed within the Atlanta Division of the Northern District of Georgia.

## PARTIES

8.    Plaintiff is a citizen of the United States of America and a resident of the State of Georgia; he submits himself to the jurisdiction of this Court.

9.    Defendant employed Plaintiff from approximately August 2022 to September 6, 2023 as a Regional Manager.

10.    Defendant is a for-profit corporation with its principal place of business at 1375 Shorebird Way, Mountain View, California 94043.

11.    Defendant is licensed to do business in Georgia and regularly does business in the Northern District of Georgia, where it employed Plaintiff.

12.     Defendant is subject to the Court's jurisdiction and may be served with process through its registered agent, CT Corporation System, at 1201 Peachtree Street, NE, Atlanta, Georgia 30361.

13.     Defendant is governed by and subject to the ADEA.

## ADMINISTRATIVE EXHAUSTION

14.     Plaintiff has satisfied all administrative prerequisites for bringing his ADEA claims in this Court.

15.     On October 18, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

16.     On June 28, 2024, the EEOC issued a Notice of Right to Sue regarding Plaintiff's Charge of Discrimination.

17.     Plaintiff brings this suit within ninety (90) days of his receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

18.     Plaintiff is a 57-year-old male.

19.     In approximately August 2022, NeuroPace hired Plaintiff as a Regional Manager.  Plaintiff was responsible for managing the Southeast region.  Plaintiff reported to National Sales Director Ida Good.

20.   Plaintiff's job performance was excellent based on objective metrics. Before he became Regional Manager, his region was the last in the country.  Within a short period of time, Plaintiff brought it up to third, notwithstanding that one of his top performers left NeuroPace.

21.   On or about May 22, 2023, Ms. Nicholas became Vice President of Sales.

22.   When Plaintiff first met with Ms. Nicholas, Plaintiff told her that he wanted to work with NeuroPace until he retired.  She asked, "how long will that be?"

23.   In late June 2023, Ms. Nicholas revoked a compensation guarantee that Plaintiff had received from her predecessor, Mark Saxton.  On information and belief, when Ms. Good told Ms. Nicholas that she thought Plaintiff would probably leave as a consequence, Ms. Nicholas responded, "let him leave."

24.   Starting in approximately July 2023, Ms. Nicholas expressed open hostility to Plaintiff, and attempted to publicly embarrass and discredit Plaintiff with his colleagues and team.  This included publicly berating him without basis for allegedly wasting everyone's time with respect to the hiring of candidates, and, on another occasion, for the manner in which he was forecasting sales (which was common to the group).  Ms. Nicholas also directed Ms. Good to put Mr. McDaniel on an unwarranted performance improvement plan.

25.     On or about July 24, 2023, Ms. Good notified Plaintiff that, the week prior, Ms. Nicholas directed her to put Plaintiff on a performance improvement plan. When Ms. Good asked why, given that Plaintiff's performance was strong (as shown by Plaintiff's numbers), Ms. Nicholas nevertheless criticized Plaintiff's performance, clinical ability, and utilization of resources.  Ms. Nicholas directed Ms. Good to start documenting everything she could on Plaintiff.

26.     On August 4, 2023, Plaintiff reached out to CEO Joel Becker and told Mr. Becker that he felt that he was being discriminated against based on his age.  In response, Mr. Becker merely asked Plaintiff what Plaintiff wanted him to do, in a manner that demonstrated a lack of concern.  Plaintiff asked for his advice, and Mr. Becker said that Plaintiff should share his concerns with Ms. Good and Ms. Nicholas.

27.     On August 17, 2023, Plaintiff sent an email to Vice President of Human Resources, Irene Blevin.  Plaintiff's email stated, in part, that he was being discriminated against based on his age and that he feared retaliation for making the complaint.

28.     Later that day, on August 17, 2023, Plaintiff met with Ms. Nicholas and expressed that he felt that she wanted someone younger than Plaintiff in the role. Ms. Nicholas did not deny that she wanted someone younger and asked Plaintiff

what he wanted, in terms of staying or leaving.  Plaintiff said that he wanted to continue his career with NeuroPace and be fully aligned and on the same page as Ms. Nicholas.  She said okay, but that Plaintiff needed to perform and fire on all cylinders.  Plaintiff responded that he already was.

29.    Less than three weeks later, on September 6, 2023, NeuroPace terminated Plaintiff.  NeuroPace claimed that it was terminating Plaintiff because the Regional Manager  position was being eliminated.  However, no other Regional Managers were let go, including Regional Managers who managed regions that Plaintiff's region was outperforming.

30.    On information and belief, the other Regional Managers, who were not terminated, were in their 40s.

31.    In instances in which NeuroPace has actually eliminated positions, the employees have been promoted to new jobs that did not previously exist.

32.    NeuroPace's justification for Plaintiff's termination is pretextual.

33.    NeuroPace terminated Plaintiff because of his age and/or because he engaged in the protected activity of opposing age discrimination.

34.    NeuroPace's ADEA violations were willful.

35.    Due to NeuroPace's violations of federal law, Plaintiff has incurred lost wages and benefits.

## COUNT I
## Discriminatory Termination in Violation of the ADEA

36.   Plaintiff is 57 years old and, at all relevant times, was an employee protected by the ADEA.

37.   Throughout his employment, and at the time of his termination, Plaintiff was more than qualified for the position in which he held.

38.   NeuroPace's Vice President of Sales, Kelley Nicholas, harbored a discriminatory animus towards Plaintiff based on his age.

39.   Defendant terminated Plaintiff because of his age.

40.   As a consequence of Defendant's violations of the ADEA, Plaintiff has incurred lost wages and benefits.

41.   Plaintiff seeks all available relief under the ADEA, including lost wages and benefits, an equal amount of liquidated damages, interest, reasonable attorneys' fees, and costs.

## COUNT II
## Retaliation in Violation of the ADEA

42.   Plaintiff engaged in protected activity under the ADEA when he complained multiple times in August 2023 that he was being discriminated against based on his age, including Plaintiff's complaint to the CEO, and Plaintiff's complaint to Human Resources.

8

43.     Defendant retaliated against Plaintiff for engaging in protected activity by, *inter alia*, terminating this employment.

44.     As a consequence of the retaliation that he experienced from Defendant in violation of the ADEA, Plaintiff has experienced lost wages and benefits.

45.     Plaintiff seeks all available relief under the ADEA, including lost wages and benefits, an equal amount of liquidated damages, interest, reasonable attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)     A declaratory judgment that Defendant's practices complained of herein violated the ADEA;

b)     Lost wages and benefits resulting from Defendant's ADEA violations;

c)     Liquidated damages for Defendant's willful ADEA violations;

d)     An award of prejudgment and post-judgment interest;

e)     Reinstatement and/or front pay and benefits;

f)     An award of costs of expenses of this action, including reasonable attorneys' fees and expert fees; and

g)     Such other and further relief as this Court deems just and proper.

9

Respectfully submitted, this 5th day of August 2024.

/s/ Justin M. Scott

Justin M. Scott

Georgia Bar No. 557463

RADFORD SCOTT LLP

160 Clairemont Avenue, Suite 610

Decatur, Georgia 30030

Telephone: 404.400.3600

Facsimile: 478.575.2590

jscott@radfordscott.com

Counsel for Plaintiff